of the Archdiocese of New Orleans, Mr. Giselson. Good morning, Your Honor. Soren Giselson on behalf of appellants. This morning I'd like to talk about the sort of two issues that seem to either predominate or in fact, however you want to say it, every issue in this case. And those two really are secrecy and sanctions. I have never argued a case, in the appellate court or otherwise, where I did not have access to the most important documents in the record. Well, the point is, the people who were kicked off the creditors' committee had an individual lawyer who basically admitted that he took confidential information and reported it to outside the scope of the bankruptcy to his friend, the principal or relative, and apparently to a journalist. What more do you need to know? We need to know what's in the record. The bankruptcy court based her sanctions against the appellants on the United States trustee report, about 70 or so affidavits, and like 18 statements or depositions that they took. In her June 7th sanctions order dismissing the appellants from the committee . . . It's not a sanctions order, by the by. If Your Honor would give me a second, I'd love to . . . You'll have to get to that, yes. Thank you, Your Honor. So, there are really two places to look to determine whether or not this is a sanctions order. The first place to look, obviously, is the court's own words. And I know it's not typical to actually read something that's written during the course of oral argument, but if Your Honor indulges me, I would like to read the one sentence in which she imputes Mr. Trahant's alleged misconduct to the committee members. And the bankruptcy judge wrote, Given Trahant's willful breach and disregard of this court's protective order and the dynamics present on the committee, the court is forced to impute Trahant's actions to those of his clients on the committee and finds cause for their removal from the committee. So, here we have the bankruptcy court judge using the term impute. In other words, she's got a finding that Mr. Trahant's alleged willful breach and disregard of the court's order is being imputed to his clients. Well, he is the agent for the clients. Yes, Your Honor. And this court has held, though, that in order to impute alleged misconduct to the client, there's got to be specific findings. There's got to be finding of knowledge or some kind of finding of a direction by the client. Absent that specific finding of bad faith, this court has repeatedly held that those kinds of sanctions need to fall. The problem with this June 7, 2000 or 2022 order is the factual predicate for that decision, she completely and rests her complete factual basis on the UST report, on the United States trustee report and the statements that were taken that were never provided to appellants before they were removed, before there's a specific factual finding of misconduct being transferred from their lawyer to them individually. Judge King? Yes, ma'am. Oh, you blanked out for . . . I mean, you're . . . Okay. I'm here, alive and well. See you back, Judge. Well, aren't you sort of circular because you're inferring it's a sanction because she used the word impute? Yes, Your Honor, and that's . . . That's it. That's what impute means. The second place I would direct Your Honor's attention is the authority with which the bankruptcy court used in order to remove the committee members. In the June 7th order, the bankruptcy stated that she did it because of 1102A4 and won her general powers under Section 105A. Now, since 2005, when 1102A4 was created, it vested the . . . it became the sole authority for the bankruptcy court to remove committee members, period, full stop. It superseded any kind of dispute among the different circuits that were sometimes using their general powers under 105A in order to remove committee members, and it said from here on out, the only place to remove committee members or to change the composition of the committee is 1102A4. 1102A4 specifically requires, without question, that first, an interested party needs to move for the removal of committee members. That never happened. The bankruptcy court did it sua sponte. Number two, those committee members who are going to get kicked off the committee need to receive notice. That never happened. No, that's notice and a hearing, right? Yeah, so the third thing was going to be hearing. Well, the point of notice . . . I mean, isn't there . . . I was looking at this and I didn't fully run it to ground, but notice and a hearing, I think, is a somewhat flexible concept and I'm not even talking yet about whether your clients have any interest that's protectable in being on the committee, but I thought notice and a hearing could depend on the circumstances. Not only was there . . . I'll say this. It wasn't argued by the Catholic Church in this case, and even . . . and I'll do you one better. In the order in which the bankruptcy court, the same order, I think it was in April of 2022, that same order in which she ordered the trustee to conduct an investigation, she also informed the parties that as soon as I get this report, we're going to circulate it and we're going to figure out what to do with it at that point. In fact, the bankruptcy court did the exact opposite. She received the trustees . . . That's probably because it never occurred to her. The lawyer for people on the committee individually would go and divulge information that somebody making charges against somebody whose name had never come up before. Your Honor, I would love to address those facts. They're not in the record. They are in the record. We don't have access to them. My clients don't have access to those documents that are in the record. Okay. Well, let's get to the nub of the case. What right do your clients have to be on a creditor's committee composed of former victims when the trustees substituted other victims' families or victims? It's not necessarily that they have a right to be on the committee. 1102A4 . . . Well, that ends the case, does it not? I respectfully disagree. 1102A4 gives them the procedural protection of you can't get removed from the committee unless a party of interest moves for the removal. They have no right to be on the committee, but they have some sort of ability to protest if they're thrown off. Yes, Your Honor, that is part of it. But it's also, if it's going to be a sanction, you don't need to have an articulated right. This court sanctioned . . . Normally, if people . . . Sanction here is a red herring. It was Mr. Trahant who was sanctioned. I respectfully disagree. If the background . . . What's your best case for the right that these people had to be on the committee? It's not . . . Well, what I just articulated, 1102A4, once they're on the committee . . . You know, not every right has an immediate remedy. Now, if some other creditor had come forward and said, the judge had no ability to do this, I'm a creditor. I'm represented by these committee members. The judge has thrown off the only small business representative on the committee, and I'm small business. I don't have time to participate. No notice in a hearing, blah, blah, blah. But your fellows are victims, tragically, or their families . . . They were raped as children. And there are other victims out there, and the other victims went on, and nobody else is complaining about this except your clients. Because they were sanctioned and removed . . . They were not . . . but they weren't injured. They were injured, Your Honor. What kind of injury are we talking about? For a sanction and for Article III standing, I assume we're trying to have this conversation within the context of Article III standing. If there is . . . Well, actually, I'm just talking about what does the . . . I mean, if you want to call it that, maybe so. If the issue is whether or not they have standing to make this complaint, to file an appeal in this court, file an appeal in the bankruptcy court, if it's a sanction, then yes. They have a standing under Article III as a sanction. If there is something in this U.S. Trustee's Report that my clients don't . . . Because we've never read it. I've never read it. The clients have never read it. That somehow conveys . . . You don't accept what the judge said? The judge didn't include any who, what, where, when, how about the sanction in that June 7th order. The judge never did. What the judge did was, the judge just did in the June 7th order. I agree 100%. You know, it might not be right. You could have a big Chapter 11 case in the example that I gave you a minute ago where the judge has hauled off no U.S. Trustee or no disclosure of confidential information whatsoever. The judge has hauled off and fired a member of the creditor's committee. And as I said, well, maybe the committee would object or maybe some other creditor who was represented by that committee would object. But it is not calling it a sanction. It's a red herring because it is just removing a member of a committee who gets paid nothing and is just supposed to participate as a monitor to keep the debtor in line. But it's the reason for the removal that makes it . . . Nothing . . . The reputation of your clients is not offended. They could fire their . . . They could have fired Trahan and then asked to go back on, I suppose. They didn't have a chance because she did it sui spati. Excuse me. They could have fired him any time since whenever this happened in 22 and today and then called the trustee and said, put me back on the committee. Hypotheticals outside the record. Well . . . We don't even know what the record says. There are hundreds . . . The record has nothing to do with this at this point. I don't . . . She stated reasons that were your committee members owe a fiduciary duty to all the creditors whom they represent. There is a presumption that the individual attorneys are their agents and if their agent goes out and does something that is on its face, well, just a clear violation of a secrecy order, then maybe you can . . . I don't know what you can say. I mean, I think they forfeited their chance to be fiduciary representatives of the creditors' committee. With all due respect, they never forfeited their chance because the bankruptcy court never gave them a chance. If the bankruptcy court would have done what she said she was going to do on the front end, which was provide notice and an opportunity to be heard, we could have submitted proof that each and every one of these appellants had two lawyers separate from Mr. Trahan who are different law firms who could have easily continued to represent without any assembled problem. But the issue here is she never gave anyone notice and an opportunity to be heard, which means if she didn't use Section 1102A4 and she couldn't use Section 105A, the only authority left to her by matter of default to remove these committee members is the inherent authority to sanction. That is all this bankruptcy judge had left, and that is further demonstration . . . I'm not a big fan of expanding 105A, but it is not limited, I believe, to the inherent authority to sanction. In this very case, in 2021, the very same judge issued an opinion looking at the 2005 creation of 1102A4, and this judge said the only authority for a bankruptcy court to remove or alter members of an unsecured creditors committee is 1102A4 full stop. She went through the entire history of 1102A4. She went through the entire history of 105A and how different judges would sometimes use it and sometimes they wouldn't. She said 1102A4 put a stop to it, and that is the only basis with which a bankruptcy judge can alter the composition of a committee. That's it. Then a year later . . . Well, you've made your argument. You have a chance for rebuttal because we're not getting anywhere. I mean, we're just saying the same things over and over. Thank you. Mr. Mintz. Good morning, Your Honors. You may please report. My name is Mark Mintz on behalf of Apolli, the Roman Catholic Church of the Archdiocese of New Orleans. I'm joined at counsel table with Samantha . . . Speak up. Speak up. Excuse me. I apologize. I'm joined at counsel table, Your Honor, with . . . Pull the mic down, please. Samantha Oppenheim. Is that better? Thank you. Samantha Oppenheim and Pat Vance. Your Honor, the court must affirm the bankruptcy court's June 7, 2022, order for four independent reasons. First, appellants lack appellate standing. Second, they appealed an interlocutory order without leave to do so. Third, they preserved no issues for appeal. And fourth, their appeal is constitutionally moot. And that's before we got to any argument on whether it was a sanction or whether we got to any argument as to whether this is, on the merits, an appropriate thing to do. This appeal turns on standing, Your Honors. District Judge Guidry and Ash both correctly found that appellants lack appellate standing because they suffered no financial harm and, therefore, do not meet the person of grief test mandated by this circuit. As Your Honors know, the person of grief test requires an appellant to show that she is directly, adversely, and financially impacted by a bankruptcy court order. Judge Willett, I think, is the one who's often quoted as putting it best sometimes, if it does not affect your pocket, it cannot burden the docket. That's from technical. Judge Standing must be connected to the exact order being appealed as opposed to the proceedings more generally. What we just heard was an argument as to this was a generally unfair. That is not the standard. Well, no. The argument is that it was generally not in accord with 1102A4. And, again, Your Honor, that's the entire point. That did not, I think as Your Honor has already said in your questions to counsel opposite, if they were not financially harmed, if they don't have a right, it's not a sanction. There is literally no person of grief standing that is consistent with our circuit precedent. Do you think there was constitutional standing? If we disagreed with you on the person of grief. I'm sorry, Judge Oldham. If we disagree with you on person of grief, just go with me on the hypothetical for a minute. Do you think they have constitutional standing? Your Honor, I think that is a very close call. And I think that the answer is they might get there, but I think it turns on exactly what was just discussed between Judge Jones and Mr. Gesselson, which is what is – was this a sanction? Was this an order? And it gets more, I think, to our constitutionally mootness argument is what would be the remedy? Because the remedy they have asked for, and that I think gets to the third question under Lujan, which is the redressability. The third – the thing that they have asked for is to be reinstated onto the committee. Well, let's look at 1102A4 and see what exactly – Well, the court can't do that, only the trustee. And that's my point. The bankruptcy court cannot say put these people back on. That is just not, again, under 1102A4 what we just heard, not a power that is available to the courts. So if it could be a sanction, which, again, it isn't, but if it could be a sanction, the redressability, as Judge Jones I think has correctly pointed out, there are some rights that can be evaded, but there is no remedy. And the remedy they have asked for is not available. Appellants have not pointed to anything in their briefs, Your Honors, that absolutely talks anything about how they were financially harmed. They do suggest the sanction order relieves them from the idea that they have to satisfy the person of grief test. There are a couple problems with that argument. First is no Fifth Circuit case has been cited that holds a sanction award relieves a party from the person of grief test. They do cite Cleveland Imaging and Lithium Oil. In those cases, this court considered appeals that involved monetary sanctions. So, again, it met the person of grief test because of the monetary sanction. More importantly, appellants were not sanctioned, as we have talked about. Both district judges have agreed that no sanction order was entered. Quite frankly and simply, appellants have no right to sit on a committee and no right was evaded by the bankruptcy court. Indeed, the bankruptcy court was forced to make a choice, Your Honors. It needed to take action against the appellant's lawyer for his violation of the protective order. The court could not and should not delve into the communications between a counsel and his client. So the bankruptcy court was left with no choice but to remove appellants from the committee to protect the bankruptcy process. The problem, Your Honors, if he remained on there and if Mr. Trahant is still counsel, then she cannot say, don't talk to your counsel. That would violate a right. That was the problem that she was facing. More than standing, however, Your Honor, procedural irregularities on this appeal abound. For example, the bankruptcy court orders interlocutory. Appellants have never sought leave to appeal. I disagree with that. I don't see how it's interlocutory. I don't think you need to make a big deal of it, but I'm just saying. I would at least like to say the committee, when it appealed, did specifically admit, the committee that they wanted to rejoin, did admit that it was interlocutory and sought leave. The committee did cite in those that the vast majority of cases to have considered removal. We don't need to rule on that anyway. I would agree, Your Honor. So I can skip that. Your Honor, we also believe that the procedural note, appellant's failure to comply with Rule 6b-2b of the Federal Rules of Appellant Procedure, is important here. Your Honor, Judge King, I think this really kind of goes to you and the Highland Capital case that you offered from January of 2023. This court held that appellants do not preserve for appeal challenges to a district court dismissal of their bankruptcy appeal for lack of standing when they did not mention the statement of issues, did not mention the standing issue on their statement of issues on appeal. Here, there are no issues preserved for appeal because no such statement was ever filed into the record in connection with their initial notice of appeal. And it's important to remember how this worked. There was an initial notice of appeal. This was set for oral argument. Oral argument was canceled, I believe, one or two days prior to it being scheduled. Then, after supplemental briefing came in, after it was sent back to the district court to consider the recusal issue and the vacator issue, then a notice of appeal was entered in compliance with 6b-2b. We cannot use or we should not be able to countenance a late filed after the briefing is complete notice of appeal to cure a previous problem. It should not work that way. Highland Capital from January, and Judge King, it's the January one I know. Citing Highland Capital is problematic because there's lots of them. So it's the one from January 2023 where that decision was made. Your Honor, as we talked about the constitutional mootness point, I think that it went into the Article III standing question that you have. But that's the entire point is this court cannot afford the relief that has specifically been asked for. Your Honor, we agree, I think, with you that we don't get to merits. We shouldn't have to get to merits on this. Given all of the procedural irregularities and postures, suffice it to say the bankruptcy court had plenty of authority to enforce her own orders. The court was faced with an attorney who lied, who willfully and flagrantly violated an order. That attorney still represents these appellants. That attorney must be disqualified from receiving confidential and protected information. But if these appellants, his clients, are on the committee, they will receive confidential information, and the court cannot limit what they tell their counsel. The court had ample authority under 105, 107, 1102 to protect her orders and to do the least she could do to limit the damage. Most of the cases cited by appellants, again, assume a sanction was entered. But there wasn't, as Your Honor so stated. Your Honor, Judge Jones, I think your example of another creditor is very poignant, especially given this case. Because that has happened in this case. There was a creditor who was removed from the committee by the United States trustee. That creditor then came forward and said, I want to either get back on the committee or have a new committee that maybe I could be appointed to. And that creditor did a massive trial. I was part of it. And we spent several days on it. None of that has happened because also we moved straight into appeal as opposed to looking at the bankruptcy court and trying to go through processes. And so what I'm getting at, Your Honor, is what's interesting as to what happened with TMI as it was removed from the committee, the court did appoint a new committee. And the United States trustee did not put TMI on that committee. They have no right to necessarily be there. They are not complaining about it. The process worked the way it should. We put in our 28J letter the same sort of concept for the Southern District of Texas. Are you trying to do some kind of harmless error argument or what? At that point, yes. If we ever got there. Again, I don't think we have to get there. So, Your Honor, I really do think I don't have to take the whole time because at the end of the day, I think that it's very clear that the procedural regularities, the standing that we've talked about, the mootness that we've talked about really do render this matter to be non-justiciable at this point. They do not have standing under personal grief or under Article III. We respectfully request that the district court dismissal be affirmed or at least that this case be dismissed. Are there any limits on notice in a hearing in cases of emergency? Your Honor, I think, again, the bankruptcy code is replete with the concept that notice in hearing, I think Your Honor was correct in this concept that it can be flexible as needed. I was just a tiny bit of looking quickly and I couldn't find the grabbing language, but normally notice in a hearing means something flexible. Well, but I think it has to be because of the emergent nature that that was existing. Right. And I mean, again, this had to happen based on the time. And I appreciate Your Honor bringing that up because I think it's an important point. I think Your Honor is right. There's nothing in the U.S. trustee report that's relevant to the issues on appeal. But more than that, Your Honor, the concept that they don't have access to it is extraordinarily misleading. The affidavits that were attached have all been unsealed under the bankruptcy court order and they are available to the public. That did occur post-appeal, but they are there and unsealed. Second, the U.S. trustee report is not. The court specifically did find that the U.S. trustee report was so interlaced with confidential material that simple redaction was not sufficient. We have repeatedly said, and as we've said to this court, and we've said it in this appeal, and we've said it in the companion appeal with Mr. Trahant, that access to that report is fine if counsel and the appellants would sign the protective order to confirm that they will not share it beyond the terms of that protective order. Mr. Gesselson and Mr. Denina have. They do have access. They have been sent to it. They have been sent to them. Who are they? I'm sorry? Who are they? Mr. Gesselson and his counsel. Oh, Gesselson. And Mr. Denina, who is his co-counsel. Oh, I see. I believe Mr. Trahant does in his own appeal as well. So, Your Honors, they simply do have the information and had access to it. I agree with Your Honors that it was not relevant to this appeal. Your Honors, have any additional questions? Not at the moment. Thank you. Thank you, Your Honor. All right. Soren Gesselson again. I'm going to try to bring this home, Your Honor. A couple things. If the bankruptcy judge didn't use 1102A4, couldn't use 105A, the only authority left for the bankruptcy court judge to do what she did was her inherent sanction power. There was no authority. She does not have any authority to remove committee members. She said it herself. The timing of her order, there was no immediacy needed for when she issued that order. As an initial matter, in addition to saying that I'm going to order the UST to conduct an investigation, the end of the investigation, we're going to talk about what the next steps are. Everybody's going to get the report. We'll see what we have to do. That is following 1102A4. But even before she issued that order, appellants filed a motion to participate. There was an issue because the debtor wanted to conduct discovery to see who did what and when and how. Appellants filed a motion to participate in the discovery process. Let us in. Let us participate. Let us join. She denied the motion, and she said it's premature. You guys will come back to it later. She had cut off access to all documents as of January of 2022. The only reason she issued her order when she issued her order was she did it two hours before mediation. When these particular committee members had prepared statements to go and meet with the Archbishop personally and tell the Archbishop for the first time face-to-face what happened to them and why. And what the bankruptcy court did two hours before that mediation was supposed to start, cut them off at the legs for no reason. There was no emergency at that point. She had cut off access in January of 2022. She had told everybody that they were going to get access to the documents and then we're going to figure out what's going to happen. Well, I don't know under what circumstances mediation was occurring, and I don't think that's relevant here. It's relevant because Your Honor made the point at the initial time I was arguing that all these things could have happened post. You could have fired Mr. Trahan. You could have done these other things, but the bankruptcy judge used the word impute. There is no question that June 7th order is a contempt order against Mr. Trahan. She said impute. She said contempt. She said bad faith, willful violation of a protective order. Then she goes, because you did this, I'm doing this. I am going to kick you four guys off the committee without notice, without an opportunity. And how do you respond to the argument that had she done it otherwise and simply fired, she had no authority to fire Trahan, so how could she have obtained counsel? This is what is supposed to happen under 1102. I'm asking you a question. Answer it. This is exactly what would have happened. Notice in the hearing, I come in and I stand in front of Judge Grable and I say, each one of my four clients are willing to just proceed with Mr. Danina and Mr. Giselson as their lawyer and to sever off Mr. Trahan altogether without any communication. That is something these appellants could voluntarily do to help fix the situation. I should have done it in the last eighteen or twenty months too. We're talking hypotheticals after the fact of things that are under the record. Judge, this is what happened when there's not notice and an opportunity to be heard. You deprive evidence. Let me get to the other point that was raised. What about redressability? What would this or the bankruptcy court have to order? The original notice of appeal, Your Honor, appealed both the June 7th order from the bankruptcy judge as well as the UST's statement or order reconstituting the committee. Those two go hand in hand. To hold that there's no redressability is to create a general rule that says the US trustee can do whatever they want, whenever they want, and no appellate court can do it. That's the whole point because if it goes back, if he can do whatever he wants, even if we find that your clients were not treated according to the letter of the bankruptcy code, it's totally in the discretion of the trustee whether to put them back on the committee or not. That disregards 1102A4. It creates . . . You just told me, you just acknowledged the trustee has to decide this. Yes, but it is and that is a true statement, but the trustee is responding to the order from the bankruptcy court. To hold otherwise is to say there is no reviewability for anything under 1102A4 and there's no reviewability to whatever the trustee does. But the court can't say. If the court is reversed . . . Yes. . . . then there is nothing in place. In other words, if we say that the court had no authority to dismiss your clients, what's happened is that we have new committee members. They don't go back into place automatically. If we're talking about a remedy, what would that look like? What kind of order could this court . . . That's part of Article III's standing. Reverse and vacate the June 7th order. Go back to order a return to the bankruptcy court judge. Provide the bankruptcy judge, provide notice and an opportunity to be heard as to allow somebody to actually file a motion to either preclude them from returning to the committee or otherwise, and then direct the U.S. trustee to inform the court. What is your intention? The trustee hasn't made a single appearance or argument going up and down the chain, even though everything was based off of their report. If they wanted to do the one thing that they could do is just to inform the bankruptcy court, yeah, let them back on. They worked for two years. They ran 450 to 500 abuse claims. It's probably two years since then, so thank you for your argument. Thank you, Your Honor. I appreciate your time. Thank you.